242 P.3d 44 (2010)
STATE of Washington, Respondent,
v.
Joseph Andrew REICHERT, Appellant.
No. 38954-1-II.
Court of Appeals of Washington, Division 2.
November 2, 2010.
*45 Michelle Bacon Adams, Attorney at Law, Port Orchard, WA, for Appellant.
Jeremy Aaron Morris, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.
BRIDGEWATER, P.J.
¶ 1 Joseph Andrew Reichert appeals his conviction for unlawful possession of marijuana with intent to manufacture or deliver. Officer Steve Valley, a Department of Corrections (DOC) employee, and two detectives visited a residence to determine whether Reichert was living where he had reported to DOC, as the terms of his probation required. We hold that detectives could accompany Officer Valley and that neither the law nor the facts support Reichert's claim that the detectives used him as pretext to evade the Fourth Amendment warrant requirement.
¶ 2 The trial court applied the reasonable suspicion standard and upheld the search of Reichert's person and the search of the residence. We hold that the trial court should have first evaluated the evidence to determine whether Officer Valley had a reasonable suspicion that Reichert had violated his probation by residing at an undisclosed location so as to allow the search of his person, and, second, whether Officer Valley had probable cause to believe that Reichert resided at the residence so as to allow the search of the residence. We reverse and remand for an evidentiary hearing using the correct standard for search of the residence.

FACTS
¶ 3 In 2008, Reichert was on probation under DOC supervision and had reported where he was to be living to DOC, as required. In May 2008, Kitsap County Sheriff detectives received a tip from an informant that Reichert was selling marijuana and was living in a different residence on Sunde Road. The detectives contacted DOC Officer Valley to determine whether Reichert was under active DOC supervision. Officer Valley confirmed that Reichert was under DOC supervision and gave the detectives a couple of addresses to visit, which the detectives checked but were unable to locate Reichert.
¶ 4 Only when the detectives had the informant take them to the Sunde Road residence did the detectives find evidence of Reichert's whereabouts. Specifically, the detectives saw a vehicle registered to Reichert parked in front of the residence.
¶ 5 The detectives contacted Officer Valley to report that Reichert did not appear to be living at the address on file with DOC. A month and a half later, they again contacted *46 Officer Valley to request the status of his investigation. Officer Valley was not Reichert's assigned community corrections officer (CCO) but, as a community corrections specialist, he had authority to help supervise probationers.[1] He asked the detectives to accompany him on a compliance check at the Sunde Road residence. They agreed.
¶ 6 At the Sunde Road residence, Officer Valley identified himself, saw Reichert through the door window, and announced that he was conducting a compliance check to verify Reichert's residence. Reichert refused to come out for about 20 minutes before he finally stepped out and said, "Take me to jail." 1 VRP (Dec. 17, 2008) at 62.
¶ 7 Officer Valley handcuffed Reichert and asked to be shown around the house. The detectives searched him for weapons, found and removed a set of keys, and read him his Miranda[2] warnings. Officer Valley then used the keys found on Reichert to open the door to the residence. Officer Valley did not step into the residence but could smell the odor of marijuana emanating from inside.
¶ 8 Based on the marijuana odor, the detectives obtained a telephonic warrant to search the residence. Before searching, the detectives had a special weapons and tactics team (SWAT) clear the house. As the SWAT team was about to enter, Roy Brandenburg[3] came out.

ANALYSIS

I. Pretext
¶ 9 Reichert argues that substantial evidence does not support the trial court's finding that Officer Valley asked the detectives to assist his own legitimate objectives. He challenges the trial court's conclusion of law based on that finding, namely, that the detectives did not use Officer Valley as pretext to evade the warrant requirement or to obtain evidence to support a search warrant. No Washington court has directly decided the issue.

A. Fourth Amendment
¶ 10 Reichert first contends that the Fourth Amendment prohibits a probation officer from conducting a warrantless search of a probationer when the probation officer acts on the request of law enforcement officials for the purpose of assisting a criminal investigation. He relies on one California Court of Appeals case and a line of Ninth Circuit federal court cases.
¶ 11 Reichert relies on People v. Coffman, 2 Cal.App.3d 681, 82 Cal.Rptr. 782 (1969), overruled by People v. Burgener, 41 Cal.3d 505, 536, 224 Cal.Rptr. 112, 714 P.2d 1251 (1986), overruled on other grounds, People v. Reyes, 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445 (1998). Coffman held that a warrantless search of a parolee's apartment by a parole officer, at the request of a police officer while the parolee was in jail, violated the Fourth Amendment. Coffman, 2 Cal. App.3d at 687, 689, 82 Cal.Rptr. 782. The court reasoned that a search is not reasonable under the Fourth Amendment where a parole agent is not engaged in administering his supervisory functions but, rather, his presence is a ruse, calculated to supply color of legality to a warrantless entry of a private dwelling. Coffman, 2 Cal.App.3d at 689, 82 Cal.Rptr. 782.
¶ 12 Reichert fails to recognize that the California Supreme Court rejected Coffman's reasoning in Burgener, 41 Cal.3d at 536, 224 Cal.Rptr. 112, 714 P.2d 1251, In Burgener, police relayed information that the defendant was engaged in criminal activity to his parole agent who, based on the information, authorized *47 a search of the apartment where the defendant was living. Burgener, 41 Cal.3d at 536, 224 Cal.Rptr. 112, 714 P.2d 1251. The court balanced the parolee's privacy interest with society's interest in public safety and concluded that the search was reasonable under the Fourth Amendment. Burgener, 41 Cal.3d at 536, 224 Cal.Rptr. 112, 714 P.2d 1251. In finding that public safety outweighed the parolee's privacy interest, the court reasoned that effective parole supervision, needed to protect the public, demanded that the parole officer investigate; that law enforcement officers conducted the search for law enforcement purposes was irrelevant. Burgener, 41 Cal.3d at 536, 224 Cal.Rptr. 112, 714 P.2d 1251.
¶ 13 Similar to the California cases, a line of Ninth Circuit cases holding that the purpose of the search as the relevant inquiry was eventually rejected. In Smith v. Rhay, 419 F.2d 160, 162 (1969), the Ninth Circuit first articulated the rule that a parole officer may not conduct a warrantless search of the parolee while acting on a prior request of law enforcement officials and in concert with them. In Smith, the police enlisted the parole officer to locate the parolee as part of their criminal investigation. Smith, 419 F.2d at 162-63. The police then accompanied the parole officer on the search at their own request. Smith, 419 F.2d at 162-63. The court rejected the practice of police enlisting a parole officer to assist them because the parole officer cannot act as the "agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed." Smith, 419 F.2d at 162-63.
¶ 14 Other Ninth Circuit cases, some of which Reichert cites, have recognized that a probationary search that is subterfuge for a criminal investigation violates the Fourth Amendment. United States v. Ooley, 116 F.3d 370, 372 (9th Cir.1997) ("the legality of a warrantless search depends upon a showing that the search was a true probation search and not an investigation search"); United States v. Jarrad, 754 F.2d 1451, 1453 (9th Cir.) (probation officer may not act as a "stalking horse" for the police to evade the Fourth Amendment warrant requirement), cert. denied, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985); see e.g., United States v. Merchant, 760 F.2d 963 (9th Cir.1985) (search that was not a genuine attempt to enforce probation but rather attempt to avoid Fourth Amendment warrant requirement was unlawful), cert. dismissed, 480 U.S. 615, 107 S.Ct. 1596, 94 L.Ed.2d 614 (1987). But the United States Supreme Court rejected the Ninth Circuit's reasoning in United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).
¶ 15 In Knights, the Court reversed a Ninth Circuit case that had invalidated a warrantless search of a probationer's house because the search was not for probationary purposes but was, instead, a mere subterfuge for a criminal investigation. United States v. Knights, 219 F.3d 1138, 1145 (9th Cir.2000), rev'd, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). The Court held that the Fourth Amendment requires no more than reasonable suspicion to conduct a search of a probationer's house and that the search at issue was lawful because the searching officer had a reasonable suspicion that the probationer was engaged in criminal activity. Knights, 534 U.S. at 121-22, 122 S.Ct. 587. To reach the reasonable suspicion standard, it reasoned that Knight's status as a probationer subject to a search condition informed both sides of the degree to which the search intruded the probationer's privacy and the degree to which the search was necessary to promote legitimate government interests. Knights, 534 U.S. at 119, 122 S.Ct. 587. On one hand, the probationer knew, based on the probation order, that he was subject to warrantless searches and, thus, had a significantly diminished reasonable expectation of privacy. Knights, 534 U.S. at 119-20, 122 S.Ct. 587. On the other hand, the government has a legitimate interest in protecting society from probationers, who are more likely to violate the law and who have more incentive to dispose of incriminating evidence. Knights, 534 U.S. at 120, 122 S.Ct. 587. Because Knights upheld the warrantless search under ordinary Fourth Amendment analysis, the Court saw "no basis for examining [the] official purpose [of the search]." Knights, 534 U.S. at 122, 122 S.Ct. 587.
*48 ¶ 16 In Griffin v. Wisconsin, the United States Supreme Court also upheld a probation supervisor's warrantless search of a probationer's home when the probation supervisor received a tip from a police detective that there "were or might be" guns in the probationer's home. Griffin v. Wisconsin, 483 U.S. 868, 871, 880, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Three police officers and another probation officer accompanied the probation supervisor to the home, but only the probation officers searched. Griffin, 483 U.S. at 871, 107 S.Ct. 3164. The Wisconsin Department of Health and Social Service had regulations permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are `reasonable grounds' to believe the presence of contraband." Griffin, 483 U.S. at 870-71, 107 S.Ct. 3164. The Wisconsin regulation authorizing the search was not an express condition of Griffin's probation, but rather, the regulation applied to all Wisconsin probationers. See Griffin, 483 U.S. at 870-871, 107 S.Ct. 3164. The Court held that a State probationary system presented a special need for the probation officers to supervise probationers and to ensure that they observe their probation restrictions. Griffin, 483 U.S. at 875, 107 S.Ct. 3164. That special need for supervision justified the Wisconsin regulation and the search under the regulation was thus reasonable. Griffin, 483 U.S. at 875-80, 107 S.Ct. 3164.
¶ 17 These federal cases demonstrate that the important question under the Fourth Amendment is whether the warrantless search of a probationer was reasonable, not whether the purpose was investigatory or probationary. Knights did not examine the purpose of the warrantless search of a probationer because it upheld the search as reasonable.[4]Knights, 534 U.S. at 122, 122 S.Ct. 587. And Griffin upheld a warrantless search of a probationer on the ground that a State's special need to supervise probationers justified the Wisconsin regulation permitting the search. Griffin, 483 U.S. at 875, 107 S.Ct. 3164.
¶ 18 Washington courts have never adopted a special needs exception; however our courts have looked to federal special needs cases when dealing with similar issues. York v. Wahkiakum Sch. Dist. No. 200, 163 Wash.2d 297, 312, 178 P.3d 995 (2008). The Wisconsin regulation in Griffin is very similar to the Washington statute allowing a warrantless search of a probationer's person, residence, automobile, or other personal property. RCW 9.94A.631. In fact, the Ninth Circuit has upheld RCW 9.94A.631[5] as satisfying the Fourth Amendment's reasonableness requirement. United States v. Conway, 122 F.3d 841, 842 (9th Cir.1997), cert. denied, 522 U.S. 1065, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998).
¶ 19 Further, the critical facts in Griffin are similar to the facts here. In Griffin, a probation supervisor searched a probationer without a warrant based on a tip from a detective that he might have guns in his apartment. Another probation officer and three police officers accompanied the probation supervisor to the apartment but only the probation officers searched. Here, the detectives gave Officer Valley information that Reichert may not be living at his residence of record, in violation of his probation conditions. When Officer Valley obtained authorization to do a compliance check, he asked the detectives to accompany him for officer safety reasons. Only Officer Valley performed the initial search of the home, whereupon he smelled marijuana and asked the officers to confirm.
¶ 20 If DOC were to effectively supervise Reichert as a probationer, an investigation was unquestionably required, and that the detectives originally gave Officer Valley the tip is irrelevant under the Fourth Amendment. It would indeed be foolish to prohibit contact between the police and DOC because *49 the police are undoubtedly concerned with criminal behavior that would violate probation requirements. Further, it is prudent for DOC officers to listen to the police and, considering officer safety, to ask them for assistance when doing a compliance check.
¶ 21 When the requisite reasonable cause to arrest or search a probationer exists under RCW 9.94A.631, society's interest in effective community custody supervision has added weight. Therefore, we hold that a searching DOC officer does not run afoul of the Fourth Amendment merely because they originally receive a tip from police that the probationer may be violating the terms of his probation.

B. Article I, § 7
¶ 22 Reichert argues that article I, § 7 of our state constitution entitles him to more protection from warrantless searches, but in so arguing, he fails to cite to any cases giving probationers greater protection under our constitution. He discusses the Gunwall factors only in the broadest sense, referencing cases that discuss the generally accepted principle that article I, § 7 of our state constitution provides greater protections than the Fourth Amendment. E.g. State v. Carter, 151 Wash.2d 118, 125-26, 85 P.3d 887 (2004). He does not cite cases or statutes to show that article I, § 7 affords greater protections to probationers than does the Fourth Amendment.
¶ 23 As we stated above, Washington courts have held that a probationer has a reduced expectation of privacy because of the State's continuing interest in supervising them. Hocker v. Woody, 95 Wash.2d 822, 826, 631 P.2d 372 (1981); State v. Campbell, 103 Wash.2d 1, 22, 691 P.2d 929 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985); State v. Lucas, 56 Wash. App. 236, 240, 783 P.2d 121 (1989), review denied, 114 Wash.2d 1009, 790 P.2d 167 (1990); State v. Patterson, 51 Wash.App. 202, 204-05, 752 P.2d 945, review denied, 111 Wash.2d 1006, 1988 WL 631972 (1988); State v. Lampman, 45 Wash.App. 228, 233, 724 P.2d 1092 (1986); State v. Coahran, 27 Wash. App. 664, 666, 620 P.2d 116 (1980); State v. Simms, 10 Wash.App. 75, 85, 516 P.2d 1088 (1973), review denied, 83 Wash.2d 1007 (1974). The rationale for excepting probationers from the general requirement that a search requires a warrant based on probable cause is that a person judicially sentenced to confinement but released on probation remains in the custody of the law. Simms, 10 Wash.App. at 82, 516 P.2d 1088. Probation is "`a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.'" Griffin, 483 U.S. at 874, 107 S.Ct. 3164 (quoting G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976)). "Probation is simply one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." Griffin, 483 U.S. at 874, 107 S.Ct. 3164.
¶ 24 Nevertheless, precisely because a probationer remains in the custody of law enforcement and because a probation officer's role is rehabilitative rather than punitive in nature, a probation officer's search according to his supervisory duties is distinguishable from that of a police officer competitively "`ferreting out crime.'" Simms, 10 Wash. App. at 85, 516 P.2d 1088 (quoting Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). A probationer's "`diminution of Fourth Amendment protection can only be justified "to the extent actually necessitated by the legitimate demands of the operation of the parole process."'" Campbell, 103 Wash.2d at 22, 691 P.2d 929 (quoting Simms, 10 Wash.App. at 86, 516 P.2d 1088). When a DOC officer is justified in making the search, he may enlist the aid of police officers in performing his duty. Simms, 10 Wash.App. at 86, 516 P.2d 1088.
¶ 25 Here, the facts do not support the argument that the detectives used Officer Valley as a "stalking horse" or as some type of pretext to avoid the Fourth Amendment warrant requirement. To the contrary, the record contains substantial evidence supporting the trial court's finding that Officer Valley was acting within the purpose of his mandate to help supervise probationers. The detectives gave Officer Valley information that Reichert may have not reported *50 living at the Sunde Road residence. Officer Valley then planned a compliance check and contacted the detectives to accompany him for safety reasons. Thus, although the detectives initially told Officer Valley that Reichert may be violating his community custody conditions, Officer Valley ultimately asked the detectives to assist him in visiting the Sunde Road residence for a DOC compliance check.
¶ 26 Reichert nevertheless asserts that Officer Valley is somehow tainted because he was not Reichert's regular CCO. But one of Officer Valley's duties was to help the CCOs supervise and manage probationers. In the present case, he assisted Reichert's regular CCO in checking whether Reichert was living at his reported address, as DOC policy required. Officer Valley was enforcing a DOC policy that was rehabilitative in nature, designed to help keep probationers in an environment conducive to law-abiding behavior. Indeed, the notion that detectives used Officer Valley as pretext to search the Sunde Road residence is even less persuasive in light of our Supreme Court's recent holding in State v. Winterstein, 167 Wash.2d 620, 630, 220 P.3d 1226 (2009), discussed below. We hold that Officer Valley's search was probationary in nature. The only question on remand is thus whether Officer Valley had authority to search the Sunde Road residence, based on probable cause that Reichert lived there.

II. Probable Cause Standard
¶ 27 The trial court applied the reasonable suspicion standard we set forth in State v. Winterstein, 140 Wash.App. 676, 166 P.3d 1242 (2007), rev'd, 167 Wash.2d 620, 220 P.3d 1226 (2009). But the Supreme Court reversed our decision and held that a CCO must have probable cause that a probationer lives at a residence before searching that residence. Winterstein, 167 Wash.2d at 630, 220 P.3d 1226. Notably, Winterstein did not change the standard under RCW 9.94A.631 that a CCO must have a reasonable suspicion before searching a probationer's person.
¶ 28 We decline to evaluate the evidence to determine whether Officer Valley had probable cause to search the Sunde Road residence. We note, however, that the informant's information has relevance, depending on the extent of his or her basis of knowledge and reliability. We further note that the Reichert's admission, if any, that he lived at the Sunde Road residence is also relevant.
¶ 29 Given that the trial court relied on the reasonable suspicion standard, the remedy our Supreme Court articulated in Winterstein, and the parties' agreement at oral argument that remand was appropriate to determine the facts under the probable cause standard, we remand for a full suppression hearing to determine if Officer Valley had probable cause to believe that Reichert lived at the Sunde Road residence before searching it.[6]
¶ 30 If on remand the trial court finds that Officer Valley had probable cause to believe Reichert resided in the same residence as Brandenburg, then it shall reenter the judgment and sentence. If the court finds that the Officer Valley did not have such probable cause, it may take appropriate action.[7]

III. Sufficiency of the Evidence
¶ 31 Reichert finally argues that the State presented insufficient evidence to find him guilty of unlawful possession of marijuana with intent to manufacture or deliver. We review a claim of insufficient evidence for "`whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Drum, 168 Wash.2d 23, 34-35, 225 P.3d 237 (2010) *51 (quoting State v. Wentz, 149 Wash.2d 342, 347, 68 P.3d 282 (2003)). An appellant challenging the sufficiency of evidence necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. Drum, 168 Wash.2d at 35, 225 P.3d 237. Circumstantial and direct evidence are equally reliable in determining sufficiency of the evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). And we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004).
¶ 32 To prove that Reichert committed unlawful possession of a controlled substance marijuanawith intent to deliver, the State had to show that he or an accomplice (1) possessed marijuana (2) with the intent to deliver. RCW 9A.08.020(3); RCW 69.50.401(1), (2)(c). Reichert stipulated that the substance found in the Sunde Road residence was marijuana, thus, we need only consider whether the evidence showed that he possessed it with an intent to deliver.

A. Possession
¶ 33 Possession may be actual or constructive. State v. Summers, 107 Wash. App. 373, 389, 28 P.3d 780, 43 P.3d 526 (2001). Actual possession occurs when the defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. State v. Jones, 146 Wash.2d 328, 333, 45 P.3d 1062 (2002). Dominion and control means that the defendant can immediately convert the item to their actual possession. Jones, 146 Wash.2d at 333, 45 P.3d 1062. Constructive possession need not be exclusive. Summers, 107 Wash.App. at 389, 28 P.3d 780. When a person has dominion and control over a premises, it creates a rebuttable presumption that the person has dominion and control over items on the premises. Summers, 107 Wash.App. at 389, 28 P.3d 78043 P.3d 526; State v. Cantabrana, 83 Wash.App. 204, 208, 921 P.2d 572 (1996).
¶ 34 Sufficient evidence supports the finding that Reichert resided at the Sunde Road residence, which is one circumstance from which the jury could infer that he had constructive possession of the nearly nine pounds of marijuana found in Brandenburg's room. First, Reichert refused to come outside and discuss his changed address and, instead, retreated into the Sunde Road residence for approximately 20 minutes. He also had keys on his person that opened the front door. Second, during the subsequent search, Detective Trogdon found a safe in a bedroom closet containing paperwork with Reichert's name on it, whereas paperwork belonging to Brandenburg was found in another room. A jury could reasonably infer from this evidence that Reichert had one room and Brandenburg the other. Importantly, one piece of paper found in Reichert's room listed the amounts for various utility bills and then that amount divided by two. Finally, in the common areas of the house, Detective Trogdon found paperwork belonging to both Reichert and Brandenburg.
¶ 35 The jury could also infer from the following evidence that Reichert had constructive possession of the marijuana found inside the residence. The detectives smelled a "very strong and distinct odor of marijuana" from the safe in Reichert's room. II VRP (Jan. 8, 2009) at 74. They also found money in Reichert's room that a narcotic dog positively identified as having been mingled with narcotics, and they found on Reichert's bathroom counter a cut top to a plastic bag that forensically matched a plastic bag found in Brandenburg's room containing one-half pound of marijuana. Also, in the living room, detectives found marijuana smoking devices, including different sized bongs, and plastic baggies with marijuana residue. Based on the foregoing, we hold that Reichert had constructive possession of the marijuana.

B. Intent to Deliver
¶ 36 Mere possession of drugs, without more, does not raise an inference of the intent to deliver. State v. Cobelli, 56 Wash.App. 921, 925, 788 P.2d 1081 (1989). Rather, the State must prove at least one additional factor, suggesting a sale and not mere possession, to corroborate the defendant's intent to deliver. State v. Hagler, 74 *52 Wash.App. 232, 236, 872 P.2d 85 (1994). In Hagler, the evidence was sufficient where the defendant was found in possession of 24 rocks of cocaine as well as $342 in cash. Hagler, 74 Wash.App. at 236, 872 P.2d 85. In another case, the court found sufficient evidence of intent where the defendant possessed drugs along with a gram scale and $850 in cash. State v. Lane, 56 Wash.App. 286, 290, 297-98, 786 P.2d 277 (1989).
¶ 37 Here, the jury had sufficient evidence that Reichert constructively possessed items commonly used to distribute marijuana, thus evidencing his intent to deliver. On top of the refrigerator in the kitchen, Detective Trogdon found numerous "seal-a-meal" bags and "food-saver" bags, some of which had cut tops, as well as some Ziploc bags. II VRP (Jan. 8, 2009) at 75. Some of the bags had a marijuana residue and some of the bags had been heat sealed (a heat sealer was found in the living room). Written on a lid of a Ziploc box were dollar amounts of different weight quantities of marijuana. Further, Detective Birkenfeld found in the living room a digital scale tainted with marijuana residue. We hold that the evidence was sufficient for a jury to conclude that Reichert had the intent to deliver the marijuana he constructively possessed.
¶ 38 We reverse and remand for a hearing consistent with this opinion.
We concur: HUNT, and VAN DEREN, JJ.
NOTES
[1] Officer Valley is a community corrections specialist with the fugitive apprehension unit of the DOC, and his responsibilities primarily include apprehending probationers under the power of an arrest warrant. Although he does not carry a caseload nor personally supervise any probationers, the DOC authorizes him to do anything that a CCO does, and his job includes contacting probationers in the field at the request of their CCO. Officer Valley is the only community corrections specialist for Kitsap and Mason counties, does not have a partner, and does not work directly with another task force. For safety reasons, he would frequently ask detectives Trogdon and Birkenfeld to accompany him on field visits in Kitsap County.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Brandenburg resided at the Sunde Road residence and his appeal is linked with this case.
[4] We could rely on Knights if the record contained evidence that Reichert had notice that, as a condition of his probation, he was subject to warrantless searches; however, Reichert's judgment and sentence from his previous conviction giving rise to his community custody condition at issue here (to report current address) is not in the record.
[5] Formerly codified as RCW 9.94A.195. See Laws of 2001, ch. 10, § 6.
[6] We note that if there was probable cause before inserting the key into the lock, inserting the key to open the door is immaterial.
[7] Reichert also argues that the fruit of the poisonous tree doctrine precludes any statements that Reichert made after the unlawful search. He does not provide any analysis or point to any statements. We decline to review this issue at this time. RAP 10.3(a)(6); State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004) ("Without argument or authority to support it, an assignment of error is waived."); see also Holland v. City of Tacoma, 90 Wash.App. 533, 538, 954 P.2d 290 ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."), review denied, 136 Wash.2d 1015, 966 P.2d 1278 (1998).