**FILED**
**DECEMBER 10, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35901-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED |
| | ) | IN PART |
| LELAND HONN KNAPP IV, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Leland Knapp appeals his conviction for second degree rape by forcible compulsion. He argues the trial court erred when it refused to give his proposed instruction on consent, which required the State to prove lack of consent beyond a reasonable doubt. We disagree. The trial court correctly instructed the jury on consent, that evidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have sexual intercourse. The trial court's instruction was consistent with *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014) and permitted Knapp to argue his theory of the case.

FACTS

Leland Knapp and Brandy Spaulding met in high school and were friends for more than a decade. On February 7, 2016, Ms. Spaulding was preparing to watch the Super Bowl when Knapp came to her home. Ms. Spaulding let him in. The events following this were disputed.

According to Ms. Spaulding, Knapp began to make sexual comments toward her and expressed an interest in having sex. Ms. Spaulding denied his advances. Knapp then left, but soon returned to the home, claiming he forgot his bandana. Ms. Spaulding let him in again and while she was sitting on the couch, Knapp threw her to the ground and attempted to pull down her pants. Ms. Spaulding said "[n]o" and tried to pull up her pants but Knapp was successful in pulling them down. Report of Proceedings (Feb. 7, 2018) (RP Trial) at 617-18. Ms. Spaulding screamed for her neighbors, but they did not hear her. Knapp then used his bandana to gag her. The struggle continued until Knapp pinned her against a wall and raped her. Ms. Spaulding continued to say, "No," "Stop," and "Don't do this." RP Trial at 623. Knapp left, and Ms. Spaulding called her mother and then the police. Ms. Spaulding was taken to the hospital where she underwent a sexual assault examination.

According to Knapp, he and Ms. Spaulding were "friends with benefits" for years

and engaged in sex together on and off. RP Trial at 638. After Ms. Spaulding let him in

the first time, Ms. Spaulding realized Knapp was high on methamphetamine and she

hinted that she wanted some. Knapp refused to give her any. Ms. Spaulding became

upset, and Knapp decided to leave. After he left, Knapp realized he forgot his bandana

and returned to retrieve it. Ms. Spaulding let him in again, and she pressed Knapp to get

her high. Eventually, Ms. Spaulding offered sex for drugs. At that point, Knapp "gave

in" and they had sex. RP Trial at 643. Afterward, Knapp could not find the

methamphetamine to give to her. Ms. Spaulding became upset and threatened to call the

police and falsely accuse him of rape. Knapp left and was later arrested. The State

charged Knapp with rape in the second degree by forcible compulsion.

At trial, the State called Crissa Flink, a sexual assault nurse examiner. Ms. Flink

utilized a sexual assault kit on Ms. Spaulding. Ms. Flink noted bruising to the prepuce

and a tear to the posterior fourchette. Ms. Flink testified that these injuries could have

been caused by consensual sex or rape.

The State also called Alison Walker, a DNA[1] scientist with the Washington State

Patrol Crime Laboratory. Ms. Walker tested the bandana and found Ms. Spaulding's

---

[1] Deoxyribonucleic acid.

saliva and skin cells on it. Ms. Walker also testified that the perineal swabs gathered by

Ms. Flink in the sexual assault kit matched a mixture of Knapp and Ms. Spaulding.

Knapp requested an instruction that told the jury the State had the burden of

proving an absence of consent beyond a reasonable doubt. The State opposed this

instruction, arguing it was not a correct statement of the law. The State instead proposed

Washington pattern jury instruction 18.25, which reads, "Evidence of consent may be

taken into consideration in determining whether the defendant used forcible compulsion

to have sexual intercourse." RP Trial at 677-78; *see also* 11 WASHINGTON PRACTICE:

WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 18.25 (4th ed. 2016).

The trial court declined to give Knapp's proposed instruction and instead gave the State's.

The jury found Knapp guilty of second degree rape. The trial court sentenced

Knapp to a midrange sentence—110 months to life. The court also imposed a $200

criminal filing fee and a $100 DNA fee.

Knapp timely appealed.

## ANALYSIS

A.    JURY INSTRUCTION

Knapp contends the trial court erred when it declined to give his proposed jury

instruction on consent. We disagree.

4

Our review of a trial court's refusal to give a jury instruction depends on the basis of the trial court's decision: If the decision was based on a factual determination, it is reviewed for an abuse of discretion; if the decision was based on a legal conclusion, it is reviewed de novo. *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015). Here, the trial court denied Knapp's instruction because it believed it would add an additional element to the crime charged. Because the trial court's decision not to give Knapp's instruction was based on a legal conclusion, our review is de novo. *See State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

Each party is entitled to have the jury instructed on its theory of the case when there is sufficient evidence to support that theory. *State v. Williams*, 132 Wn.2d 248, 259, 937 P.2d 1052 (1997). Jury instructions are sufficient "'if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.'" *State v. Rodriguez*, 121 Wn. App. 180, 184-85, 87 P.3d 1201 (2004) (quoting *State v. Irons*, 101 Wn. App. 544, 549, 4 P.3d 174 (2000)). Read as a whole, the jury instructions must make the legal standard apparent to the average juror. *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009).

The United States Supreme Court has interpreted the due process clause of the Fourteenth Amendment to the United States Constitution as "requiring the State to prove

5

'beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged.'" *W.R.*, 181 Wn.2d at 761-62 (alterations in original) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). Sometimes, the burden is allocated to the defendant to prove an affirmative defense—when the defense excuses conduct that otherwise would be punishable. *Id.* at 762.

In *W.R.*, the defendant was charged with rape in the second degree under RCW 9A.44.050(1)(a). *W.R.*, 181 Wn.2d at 760. The defendant proceeded to a bench trial and conceded that he had sex with the victim, but asserted the sex was consensual. The court convicted the defendant, finding the State proved rape in the second degree beyond a reasonable doubt while the defendant failed to prove consent by a preponderance of the evidence.

On appeal, the court began by reevaluating precedent, and recognized a flaw in its prior rulings—that requiring the defendant to prove consent by a preponderance of the evidence overlooked the "negates" analysis. *Id.* at 763. The "negates" analysis stands for the proposition that the State cannot "burden a defendant with proving a defense that necessarily negates an element of the charged offense." *Id.* at 764. The court then found that consent negates the "forcible compulsion" element in second degree rape. *Id.* at 765-68.

Under RCW 9A.44.010(6), "'[f]orcible compulsion'" is defined as "physical force which overcomes resistance, or a threat . . . that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." "There can be no forcible compulsion when the victim consents, as there is no resistance to overcome." *W.R.*, 181 Wn.2d at 765. Therefore, because consent negates the element of "forcible compulsion," it violates due process to allocate the burden of proving consent by a preponderance of the evidence to the defendant. *Id.* at 766-68. In essence, it would relieve the State of its burden and place it on the defendant.

For this reason, the Washington Supreme Court overturned years of precedent and held that in rape cases involving forcible compulsion and a defense of consent, consent negates forcible compulsion and due process prohibits burdening the defendant to prove consent by a preponderance of the evidence. *Id.* at 768. The defendant may be burdened with putting consent at issue, but such evidence need only create reasonable doubt as to the victim's consent. *Id.*

Here, both parties rely heavily on *W.R.* Knapp argues that *W.R.* stands for the proposition that the burden to prove consent has now shifted to the State, and the State must prove a lack of consent beyond a reasonable doubt. Knapp's proposed jury

instruction read: "Consent means that at the time of the act of sexual intercourse there are actual words or conduct indicating a freely given agreement to have sexual intercourse. The Defendant has no burden to prove that sexual intercourse was consensual. It is the State's burden to prove the absence of consent beyond a reasonable doubt." Clerk's Papers (CP) at 75. He argues this proposed jury instruction was erroneously denied. We find Knapp's reading of *W.R.* not reflective of its actual holding.

The court in *W.R.* focused on whether the burden to prove consent was correctly placed on the defendant. It did not hold that the State must prove the absence of consent. The court stated:

> As such, the defense of consent should be treated similar to the alibi defense at issue in [*State v.*] *Riker*[, 123 Wn.2d 351, 869 P.2d 43 (1994)] in that the defendant need only produce sufficient evidence to create a reasonable doubt as to the victim's consent. . . . [T]he burden must remain on the State to prove forcible compulsion beyond a reasonable doubt.

181 Wn.2d at 766-67. If the trial court had given Knapp's instruction, it would have added a fourth element to the charged offense. The State would have had to prove: (1) Knapp engaged in sexual intercourse with Ms. Spaulding, (2) the sexual intercourse occurred by forcible compulsion, (3) the act occurred in Washington, *and* (4) there was an absence of consent. *See* RCW 9A.44.050(1)(a).

8

Here, the trial court's instructions required the State to prove beyond a reasonable doubt the first three elements recited above. With respect to consent, the trial court's instruction read: "Evidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have sexual intercourse." CP at 430. The consent instruction was taken verbatim from WPIC 18.25. WPIC 18.25 was modified after the Supreme Court's ruling in *W.R.* The comments to WPIC 18.25 direct courts to use this instruction with WPIC 41.02—rape in the second degree. Although the WPICs are not authoritative and do not have prior approval from any court, they are persuasive as restatements of the existing law. *See State v. Mills*, 116 Wn. App. 106, 64 P.3d 1253 (2003), *rev'd on other grounds by* 154 Wn.2d 1, 109 P.3d 415 (2005).

We conclude the trial court did not commit legal error when it denied Knapp's proposed instruction. Knapp's proposed instruction was an incorrect statement of the law—*W.R.* did not hold that the burden to prove an absence of consent shifted to the State. Instead, it held that the burden to prove consent cannot be placed on the defendant.

Moreover, when read as a whole, the trial court's instructions allowed Knapp to argue his theory of the case. Knapp claimed the sexual intercourse was consensual. The court's instructions on the elements of the offense and consent allowed Knapp to argue

9

his theory of the case—that Ms. Spaulding consented to sexual intercourse and the State failed to prove forcible compulsion beyond a reasonable doubt.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

B.     CRIMINAL FILING FEE AND DNA FEE

Knapp contends that the $200 criminal filing fee and the $100 DNA fee must be struck from his judgment and sentence based on *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).  The State concedes this point and we agree.

Engrossed Second Substitute House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing.  LAWS OF 2018, ch. 269, § 6(3); *Ramirez*, 191 Wn.2d at 745-47.  Among the changes was an amendment to former RCW 36.18.020(2)(h) (2015) to prohibit the imposition of the $200 criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h).  As held in *Ramirez*, the changes to the criminal filing fee statute apply prospectively to cases pending on direct appeal prior to June 7, 2018.

*Ramirez*, 191 Wn.2d at 747. Accordingly, the change in the law applies to Knapp's case. Because Knapp was indigent in the trial court and is still indigent on appeal, the $200 criminal filing fee should be struck pursuant to *Ramirez*.

The change in the law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. The record establishes that Knapp has two prior Washington State felonies since 2002. Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample. *State v. Catling*, 193 Wn.2d 252, 259, 438 P.3d 1174 (2019); *see also* RCW 43.43.754; LAWS OF 2002, ch. 289, § 2. Knapp's prior felonies give rise to a presumption that the State has previously collected a DNA sample from him. The State has not requested an opportunity to contest this presumption. We, therefore, direct the trial court to strike the DNA collection fee.

C.      STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Knapp filed a statement of additional grounds for review alleging prosecutorial misconduct and ineffective assistance of counsel. But Knapp's assertions do not inform us of the specific conduct he claims was prosecutorial misconduct nor does he describe with sufficient specificity how his counsel was ineffective. Because Knapp's assertions

No. 35901-8-III
*State v. Knapp*

do not inform us of the nature and the occurrence of the claimed errors, we decline to

review them. *State v. Clark-El*, 196 Wn. App. 614, 625, 384 P.3d 627 (2016).

Affirmed.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

12