# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53970-5-II |
| Respondent, | |
| v. | |
| DALTON RAY TRAPP, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Dalton Trapp appeals his conviction for unlawful possession of a controlled substance—methamphetamine. Trapp argues that (1) the evidence was insufficient to support his conviction and that (2) the trial court erred in refusing to give an affirmative defense jury instruction for unwitting possession. The State argues that the evidence was overwhelming and that Trapp waived this affirmative defense when he failed to raise the issue at the omnibus hearing.

We hold that the evidence was sufficient to support Trapp's conviction, but that Trapp was entitled to an unwitting possession jury instruction and refusal to give this instruction was not harmless. Thus, we reverse and remand.[1]

---

[1] Alternatively, Trapp argues that he received ineffective assistance of counsel when his defense counsel failed to object to the trial court's refusal to give the jury an instruction on the affirmative defense of unwitting possession and that the trial court erred when it imposed a Department of Corrections supervision fee. Because we reverse and remand, we do not consider these arguments.

FACTS

In February 2019, detectives from the Longview Police Department served a search warrant at a single-wide mobile home in Castle Rock. That warrant named a person other than Trapp as its target, but it permitted officers to search the residence for illegal narcotics and related contraband. Prior to the search, the investigating detective briefed the search team that Dalton Trapp might be present at the residence, but it was not confirmed that he lived there.

When officers entered the mobile home, they encountered numerous people, including Trapp. When officers first saw Trapp, he was exiting a room into a long hallway that led to the back of the mobile home, where two bedrooms were located. Trapp's girlfriend, Desiree Fletcher, was staying in the mobile home. A detective interviewed Trapp at the scene, and Trapp made statements to the detective, the substance of which was disputed at trial. Fletcher told police that she was staying in the bedroom.

Officers searched Fletcher's bedroom. The room contained both male and female clothing. During the search, police officers found a metal tin, plastic "baggy," and a loaded syringe, all containing suspected methamphetamine. Other empty, apparently used syringes were also found in the room. Photographs of the bedroom showed the syringes were located in a bag on a desk and in between books on a shelf. Photographs also showed that the plastic bag was located on a sliding keyboard shelf in a desk. A test performed by the Washington State Patrol Crime Laboratory concluded that the suspected methamphetamine was methamphetamine.

No drugs were found on Trapp's person. Trapp was arrested and charged with one count of unlawful possession of a controlled substance—methamphetamine.[2]

Before trial, Trapp and the State completed an omnibus order stating that Trapp would assert a general denial defense. The trial court held an omnibus hearing in April 2019, and Trapp confirmed the omnibus order, which was signed by the trial court judge. During a July 18 pretrial conference, Trapp confirmed he had been given the State's proposed jury instructions and said that they looked appropriate. These proposed instructions did not contain an unwitting possession instruction.

At trial, Officer Jordan Sanders testified about his conversation with Trapp. Detective Sanders testified that he asked Trapp which room was his room and that Trapp identified the room where the illegal narcotics were found. Detective Sanders also testified that he asked Trapp what would be found in the room, and Trapp said they would find roughly a "quarter of a gram of meth." Verbatim Report of Proceedings (VRP) at 113. Detective Sanders further testified that Trapp said that if Fletcher was going to be charged, she "wasn't the only one responsible," that they were "his drugs" just as much as they were hers, and that "he was just as much responsible." VRP at 116-17. According to Detective Sanders, Trapp admitted to being an intravenous methamphetamine user and that he was "just as much responsible as Mrs. Fletcher for the illegal narcotics that [were] in the room." VRP at 117.

---

[2] RCW 69.50.4013(1).

Trapp also testified. Trapp said that he did not live in the mobile home and only visited Fletcher there "from time to time." VRP at 153. Trapp denied that he identified the room where he was staying as his room, and had said only that it was a room he was staying in at the time of the raid. Trapp also testified that Fletcher had been living in the mobile home for six months, but that he lived in his own home with his mother. Trapp further testified that he was visiting Fletcher after his shift at work and had been in the mobile home for only a few hours the day of his arrest. Trapp said that he kept no belongings in the bedroom where he visited Fletcher except for his tattooing equipment.

Trapp further testified that he did not have anything to do with the drugs or where they were located in the mobile home. Trapp said he "had no idea" about the drugs in the room, and that he had never seen the drugs and paraphernalia that were seized by the police until the officers showed them to him. Trapp testified that he occasionally smoked methamphetamine, but Trapp denied telling Detective Sanders that he was an intravenous drug user. Trapp also testified that Fletcher and Terry McDonald, who owned the home and who was the subject of the search warrant, were both intravenous drug users and that Trapp was falsely accredited for the related items found in the mobile home.

After the defense had rested its case, the trial court asked Trapp's attorney if he had any objection to the proposed jury instructions. Trapp's attorneys stated, "I think we need to add unwitting possession. I wasn't entirely sure how he dealt with that issue, because I hadn't asked him that. And I think that from what he testified, unwitting possession would be an appropriate addition." VRP at 162.

The State objected based on Trapp not identifying unwitting possession as an affirmative defense sooner, stating, "[W]e have never been informed that the Defense would be pursuing an unwitting possession defense; and, to tell us this now, after we've rested our case, is unacceptable." VRP at 162. Trapp's attorney replied that he was not aware of the defense until Trapp testified.

The trial court denied Trapp's request to give the unwitting possession instruction, stating:

> Well, I think—I think that's a defense that really needs to be stated. In reviewing the Omnibus Order filed the 22nd of April, it is a general denial. No other—nothing else was indicated at that point in time.
> I have to agree with the State, in that if they were aware that that was a possibility, I think the testimony may have changed somewhat, or there would be some additional testimony that would've been presented. I think unless—and I don't know that the State is in a position where even if I allowed that instruction in, that they would be able to reopen—and allow them to reopen their case if they could get any of their witnesses back to testify. So, I do not think I'm going to allow that at this point.

VRP at 162-63. The jury returned a verdict of guilty of unlawful possession of a controlled substance—methamphetamine. Trapp appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Trapp argues that the evidence was insufficient to convict him because the State failed to prove that he had dominion and control over the methamphetamine. He argues that the evidence proved only that he was an occasional visitor of the bedroom and that the methamphetamine found there was "not readily observable." Br. of Appellant at 12. Trapp also argues that his alleged statements at the scene did not amount to an admission of possession by him and that

5

"there was very little evidence connecting [him] to the methamphetamine or the premises where the methamphetamine was located." Br of Appellant at 13. We disagree.

A. *Legal Principles*

1. *Standard of Review*

"Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). A defendant admits the truth of all the State's evidence when he or she challenges the sufficiency of the evidence. *Cardenas-Flores*, 189 Wn.2d at 265. "Circumstantial evidence and direct evidence are equally reliable" and "[c]redibility determinations are for the trier of fact and are not subject to review." *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We defer to the trier of fact on conflicting testimony, credibility, and the persuasiveness of evidence. *State v. Raleigh*, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010).

2. *Constructive Possession*

Possession, for purposes of the crime of possession of a controlled substance, may be constructive. *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010). Constructive possession occurs if the defendant has dominion and control over the item. *Reichert*, 158 Wn. App. at 390. Substantial evidence must exist to prove dominion and control. *State v. Davis*, 182 Wn.2d 222, 235, 340 P.3d 820 (2014) (Stephens, J., dissenting). We consider the totality of the circumstances when deciding whether substantial evidence supports a reasonable inference of

dominion and control therefrom. *State v. Enlow*, 143 Wn. App. 463, 468-69, 178 P.3d 366 (2008).

When a defendant can immediately convert the item to their actual possession, they have dominion and control over the item. *Reichert*, 158 Wn. App. at 390. We consider physical proximity as evidence of dominion and control, but physical proximity alone is insufficient to establish dominion and control. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).

Constructive possession need not be exclusive; more than one person can be in possession of the same item. *Reichert*, 158 Wn. App. at 390. Dominion and control over a premises creates a rebuttable presumption for dominion and control over the items on the premises. *Reichert*, 158 Wn. App. at 390. However, knowledge of an item on the premises, without more, is not sufficient to establish dominion and control. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117(2012).

Here, viewing the evidence in favor of the State, Trapp told Detective Sanders that he was a methamphetamine user, and police officers would find methamphetamine in the room that he was observed exiting. Trapp specifically identified the room where methamphetamine was located as his room. Trapp told Detective Sanders that he was just as responsible as Fletcher because the methamphetamine was also his. Trapp's testimony contradicted Detective Sanders's, but we view the evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265. We defer to the trier of fact on its credibility, persuasiveness, and for resolving conflicting testimony. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). Trapp's words were later corroborated when a search of the room revealed the presence of

methamphetamine, paraphernalia, and his personal items. The State argued that the approximate quantity of drugs that Trapp had relayed to the detectives was accurate, which was, arguably, further circumstantial evidence of his constructive possession.

Trapp relies primarily on *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969), and *State v. Spruell*, 57 Wn. App. 383, 788 P.2d 21 (1990) to argue that the totality of circumstances is insufficient to support a conviction under constructive possession. In *Callahan*, Callahan admitted to handling drugs earlier in the day after drugs were found throughout a houseboat where he had been staying for two or three days. *Callahan*, 77 Wn.2d at 28. Callahan admitted to ownership of numerous personal possessions found onboard, including books on narcotics and scales typically used to measure drugs. 77 Wn.2d at 28. *Callahan* held that the evidence was insufficient to show dominion and control because there was no showing that Callahan had dominion or control over the houseboat, and he was only a temporary guest who did not pay rent. 77 Wn.2d at 31. Importantly, another witness testified that the drugs belonged to him, that he had sole control over them, and that he had not given them to anyone else. 77 Wn.2d at 31; *but see State v. Isom*, 181 Wn. App. 62, 66, 567 P.2d at 31.248 (1977) (discussing *Callahan* and explaining that direct proof of exclusive possession of another does not, as a matter of law, negate circumstantial evidence that another was also in possession of contraband). This witness's testimony was substantiated by other witnesses. *Callahan*, 77 Wn.2d at 28.

*Callahan*, is distinguishable. Here, Trapp specifically made incriminating admissions to the police about the drugs and his dominion and control of the premises. Trapp told police they would find drugs in a room of the mobile home that he claimed possession over and that he

shared with Fletcher. Trapp told police that he and Fletcher were both equally responsible for the drugs. Although Trapp contends that the evidence shows he was "just an occasional visitor who happened to be present during the execution of a warrant unrelated to him," Br. of Appellant at 12, we view the evidence and all reasonable inferences in the light most favorable to the state. *Cardenas-Flores*, 189 Wn.2d at 265.

In *Spruell*, police raided a house and found Spruell in close proximity to drugs and drug paraphernalia. 57 Wn. App. at 384-85. The State had no evidence of any connection between Spruell and the house, including the purpose of his presence or the duration of his visit. 57 Wn. App. at 388. Reasoning that "presence and proximity to the drugs is not enough," the *Spruell* court held that the evidence was insufficient to support dominion and control. 57 Wn. App. at 389.

*Spruell* is also distinguishable. Spruell had little to no apparent connection to the premises where the drugs were found; whereas here, Trapp laid a claim over the room and the drugs when interviewed by police. The evidence against Trapp in this case goes beyond mere presence, proximity, and knowledge.

The State has presented substantial evidence of constructive possession in this case. That evidence, viewed in the light most favorable to the State, showed that Trapp was in the room where drugs were found and that he knew those drugs were there. Going beyond that evidence of his proximity and knowledge, Trapp also claimed ownership over the illegal narcotics and the room. Trapp also admitted he was an intravenous methamphetamine user. Trapp's statements regarding where and what kind of drugs would be found were corroborated by physical evidence.

The evidence showed that the room contained methamphetamine, intravenous drug paraphernalia, men's clothing, and Trapp's tattoo equipment. Accordingly, we hold that sufficient evidence supports Trapp's conviction for unlawful possession of a controlled substance—methamphetamine, based on Trapp's constructive possession of the methamphetamine.

## II. Unwitting Possession Jury Instruction

Trapp argues that the trial court erred by refusing to give an unwitting possession jury instruction. Trapp argues that this defense was supported by sufficient evidence because he testified that he had no knowledge of and had not seen the drugs and paraphernalia that were seized by police until they showed them to him following the search of his room. He argues that this error was not harmless and that his conviction must be reversed and remanded for a new trial.

The State does not disagree that evidence supported an unwitting possession instruction.[3] Instead, the State argues that Trapp waived an unwitting possession defense instruction because he failed to raise the issue at his omnibus hearing. The State argues that an additional defense instruction beyond what was disclosed at the omnibus hearing would be a violation of discovery rules and that the trial court was justified in refusing to administer the additional instruction

---

[3] The State presents no argument on this issue.

pursuant to CrR 4.5 and 4.7. The State also argues that there was overwhelming evidence of Trapp's guilt.[4]

We agree with Trapp and hold that Trapp did not waive his right to request an unwitting possession jury instruction, and that the evidence in the trial entitled him to such instruction. We further hold that the trial court's refusal to instruct the jury on unwitting possession was an error that requires reversal.

A.    *Legal Principles*

1. *Standard of Review*

Neither party addresses the standard of review on this issue. We review a trial court's decision to refuse to give a jury instruction de novo when that decision is based on a legal conclusion. *State v. Knapp*, 11 Wn. App.2d 375, 379, 453 P.3d 1006 (2019), *review granted*, 195 Wn.2d 1014 (2020). We review the type of sanctions a trial court imposes under CrR 4.7 for an abuse of discretion. *State v. Ruelas*, 7 Wn. App. 2d 887, 896, 436 P.3d 362, *review denied*, 194 Wn.2d 1015 (2019). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." *In re Det. of Taylor-Rose*, 199 Wn. App. 866, 880, 401 P.3d 357 (2017).

The trial court here did not state the theory upon which it denied Trapp's instruction. It stated it was refusing to give Trapp's proposed instruction because the omnibus order failed to mention the affirmative defense of unwitting possession, and because the State might not be able

---

[4] The State does not refer to this as "harmless error," although its analysis appears to be a harmless error analysis.

to reopen its case. This ruling was either a legal conclusion based on the omnibus order or was a sanction for late disclosure of a defense.

If we review this ruling as the trial court's legal conclusion that a defense is waived if it is not listed in the omnibus order, our review is de novo. On the other hand, if we review the trial court's ruling as a sanction for late disclosure of an affirmative defense, our review is for an abuse of discretion. Reviewed under either standard, we hold the trial court erred.

B.      *Jury Instruction Not Waived Under CrR 4.5*

Trapp argues that the trial court erred when it refused to instruct the jury on the defense of unwitting possession. The State argues that because the unwitting possession defense was not raised at the omnibus hearing, the issue was waived, citing CrR 4.5. We disagree.

When a defendant enters a plea of not guilty, the trial court sets an omnibus hearing. CrR 4.5(a). The rule provides, in CrR4.5(d) entitled "Motions," that "motions and other requests" should be presented at the omnibus hearing. Failing to raise or give notice at the hearing of any error or issue of which the party concerned has knowledge may constitute a waiver of such error or issue. *State v. Koloske*, 34 Wn. App. 882, 884, 667 P.2d 635 (1982). At the conclusion of an omnibus hearing, a trial court shall make a summary memorandum that must substantially include a section for a "[d]efendant to state the general nature of his defense." CrR 4.5(h) (section II, omnibus application form).

Here, Trapp's lawyer told the trial court that he had no knowledge that Trapp would raise an affirmative defense of unwitting possession in his testimony. More importantly, the waiver in CrR 4.7 is in the "motions" section. Nowhere does the rule state that a *defense* not stated in the

order is waived. Indeed, such a rule could have serious implications on a defendant's constitutional right to present a defense. The United States Constitution guarantees a criminal defendant "'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

Moreover, the State cites no authority to support the proposition that failing to include a specific affirmative defense under the "general nature of the defense" requirement of the omnibus hearing summary memorandum constitutes a waiver of a defendant's entitlement to a jury instruction. Instead, the State relies on three cases where the trial court ruled that a defendant had waived other issues for failing to raise them at the omnibus hearing. *Koloske*, 34 Wn. App. at 885 (challenge to the admissibility of prior convictions for impeachment is waived when not properly asserted); *State v. Dent*, 123 Wn.2d 467, 480, 869 P.2d 392 (1994) (challenge to venue is waived when not raised at omnibus hearing); *State v. Harris*, 36 Wn. App. 746, 747, 677 P.2d 202 (1984) (severance of defendants is waived when not raised at omnibus hearing). These cases are factually distinguishable because here, the trial court refused a jury instruction for an affirmative defense.

Accordingly, we hold that Trapp did not waive his unwitting possession defense by failing to include the defense in his omnibus hearing disclosures.

C.     *Improper Sanction*

Trapp argues that the trial court improperly refused his instruction. The State argues that Trapp violated CrR 4.7, thus, this was a proper discovery sanction. Reviewing the trial court's

denial of Trapp's request for an unwitting possession instruction as a discovery sanction, we hold the trial court abused its discretion.

A defendant is required to "state the general nature of the defense" as an obligation of pretrial discovery. CrR 4.7(b)(2)(xiv). A trial court may sanction a criminal defendant by excluding evidence under CrR 4.7(h)(7)(i) for failing to comply with discovery deadlines. *Ruelas*, 7 Wn. App. 2d at 896. Exclusion of evidence is an extraordinary sanction and should be applied narrowly. *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014). Cases discussing imposition of sanctions against a criminal defendant address excluding *witness testimony* and *evidence*. *See Ruelas*, 7 Wn. App.2d at 896; *see State v. Hutchinson*, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998), *abrogated on other grounds by State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020). We are unable to find, and the State did not cite, any case where a trial court refused to give an affirmative defense jury instruction as a discovery sanction.

Refusal to give a jury instruction, if ever appropriate, is a more severe sanction than excluding testimony. Other states have held that precluding a defendant from raising an affirmative defense as a sanction for failing to comply with a discovery rule requiring disclosure of affirmative defenses to be proper only in extreme circumstances. *See People v. Houser*, 305 Ill. App. 3d 384, 390, 712 N.E.2d 355 (1999) ("Excluding an accused's defense is an extreme sanction, applicable only in the most extreme situations."); *see People v. Diaz*, 930 N.E. 2d 264, 269, 904 N.Y.S.2d 343 (2010) (preclusion of affirmative defense bears on a defendant's constitutional rights).

14

Before a trial court can preclude evidence based on a discovery violation, the court must weigh four factors: the effectiveness of less severe sanctions; the impact of evidence preclusion on the evidence at trial and the outcome of the case; the extent to which the prosecution will be surprised or prejudiced by the evidence; and whether the violation was willful or in bad faith. *Hutchinson*, 135 Wn.2d at 883.

Here, the trial court did not consider any other less extreme sanctions when it refused Trapp's request for an affirmative defense instruction of unwitting possession. The court made no finding that Trapp's alleged violation of discovery was willful or in bad faith. The trial court reasoned that instructing the jury would be prejudicial to the State but it did not balance against Trapp's own rights and interests. There is no indication that Trapp himself knew that his testimony disavowing knowledge of the drugs was an affirmative defense, and the trial court did not inquire about counsel's trial preparation. Because the trial court did not consider the four factors before imposing this extreme sanction, we hold that, it was an abuse of discretion to deny Trapp's proposed jury instruction.

D.      *Sufficient Evidence for Jury Instruction*

Trapp argues that there is sufficient evidence to support instructing the jury on the affirmative defense of unwitting possession. The State does not dispute this claim. We agree with Trapp.

Unwitting possession is an affirmative defense that can be raised in a prosecution for unlawful possession of a controlled substance. *State v. George*, 146 Wn. App. 906, 915, 193 P.3d 693 (2008). Because unlawful possession is a strict liability crime where the State has the

15

burden of proving only the nature of the substance and the fact of possession beyond a reasonable doubt, the defense of unwitting possession "ameliorates the harshness of . . . strict liability." *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004) (quoting *State v. Cleppe*, 96 Wn.2d 373, 381, 635 P.2d 435 (1981). This defense must be proved by a preponderance of the evidence. *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998).

A defendant in a criminal case is "'entitled to have the trial court instruct upon its theory of the case if there is evidence to support the theory.'" *George*, 146 Wn. App. at 915 (quoting *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986)). Failure to give a warranted unwitting possession instruction for an unlawful possession of a controlled substance charge is generally a reversible error. "'*State v. Mullins*, 128 Wn. App. 633, 639, 116 P.3d 441 (2005). "In evaluating whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must interpret it most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility, which are exclusive functions of the jury.'" *George*, 146 Wn. App. at 915 (quoting *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956 (2000)).

When viewed most strongly in favor of Trapp, and without weighing the proof or judging the witnesses' credibility, sufficient evidence supported a finding by a rational trier of fact, by a preponderance of the evidence, that Trapp unwittingly possessed methamphetamine. Trapp testified that he never admitted to (1) being an intravenous drug user, (2) knowledge of the presence of drugs in the bedroom, and (3) ownership or responsibility over the drugs. Additionally, Trapp testified that he had no knowledge of the drugs that were seized in the

bedroom until after the police raid. Trapp also argues that the drugs and paraphernalia were not particularly observable in the room, a fact which is borne out in the exhibit photographs.

Accordingly, we hold that the evidence was sufficient to support a jury instruction on the affirmative defense of unwitting possession.

E.     *Refusal Demands Reversal*

Refusal to give a jury instruction may be harmless error "if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." *See State v. Hansen*, 46 Wn. App. 292, 297, 730 P.2d 706, (1986), *aff'd* 737 P.2d 670 (1987) (holding that failing to instruct on a lesser included offense was harmless where the jury rejected an intermediate offense and convicted of the greater offense). Similarly, Division One of this court in *State v. Birdwell*, 6 Wn. App. 284, 297, 492 P.2d 249, 257 (1972) held that failure to give an unwitting possession instruction was harmless where Birdwell was able to argue his theory of the case under the given possession with intent to sell instructions. The court reasoned that the intent to sell instructions were sufficient because—"it is manifestly impossible for one to have an intent to sell something that he does not know he possesses." 6 Wn. App. 298. The *Birdwell* court noted, however that having only a possession instruction would present a different case. 6. Wn. App. at 298.

Relying on the logic of *Birdwell,* Division One of this court held that failure to give an unwitting possession instruction on a simple possession charge is reversible error because the elements of the crime do not include intent or knowledge. *George*, 146 Wn. App. at 915. We agree with *George*.

No. 53970-5-II

Accordingly, we hold that Trapp was entitled to a jury instruction on the affirmative defense of unwitting possession. Because Trapp was entitled to the instruction that the trial court refused to give, this is an error demanding reversal. *George*, 146 Wn. App. at 915.

### III. CONCLUSION

We hold that sufficient evidence was presented to the jury to sustain Trapp's conviction for unlawful possession of a controlled substance. However, the trial court erred in not instructing the jury on the affirmative defense of unwitting possession at Trapp's request. Because the evidence shows Trapp was entitled to this defense, we reverse Trapp's conviction and remand to the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____, C.J.
L__, C.J.

_____
Glasgow, J.

18