# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54218-8-II |
| Respondent, | |
| v. | |
| TIMOTHY CHARLES MORENO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Timothy C. Moreno appeals his convictions and sentence for unlawful possession of a controlled substance, heroin, with intent to deliver and unlawful possession of a controlled substance, methamphetamine, with intent to deliver.  He argues that (1) the evidence was insufficient to sustain his convictions, (2) the trial court erred by denying suppression of physical evidence resulting from a search warrant, (3) the trial court erred by giving an accomplice liability jury instruction, (4) the trial court erred by allowing the jury to hear prejudicial evidence of a child being in the car where the crimes occurred, and (5) he should be resentenced without consideration of his prior drug possession convictions.  Moreno also argues in a statement of additional grounds (SAG)[1] that he received ineffective assistance of counsel and the prosecutor committed misconduct.

---

[1]  A defendant may file a statement of additional grounds "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed" on direct appeal by their counsel.  RAP 10.10(a).

Except for Moreno's argument that he should be resentenced without consideration of his prior drug possession convictions, Moreno's arguments are unpersuasive. Also, Moreno's SAG claims fail. Accordingly, we affirm Moreno's convictions, reverse Moreno's sentence, and remand to the trial court for resentencing consistent with *State v. Blake*.[2]

FACTS

After receiving a tip about a drug deal from a confidential informant (CI), Sergeant Chris Packard of the Thurston County Sheriff's Office observed Moreno and another man, Jimmy Castilla-Whitehawk, sitting in a Mini Cooper in a retail store parking lot. Sergeant Packard eventually approached the car with another officer, detained Moreno and Castilla-Whitehawk, and applied for a search warrant for the Mini Cooper.

A.    WARRANT AND SEARCH

Sergeant Packard applied telephonically for a search warrant. During the call with the magistrate, the magistrate asked about probable cause, and Sergeant Packard noted that the CI had been a reliable informant in past investigations. Sergeant Packard said that the CI told him Moreno was a drug dealer but that the CI "did not . . . ever purchase or I should say recently has not purchased . . . any narcotics from Mr. Moreno, but . . . [Moreno]'s offered narcotics to [the CI] on several different occasions." Clerk's Papers (CP) at 186. Sergeant Packard also said that the CI told him that they were "taking Moreno to the [retail store]" to meet up with Castilla-Whitehawk, and "the plan was for Mr. Moreno to purchase . . . a few ounces of believed heroin from

---

[2]  197 Wn.2d 170, 481 P.3d 521 (2021).

Whitehawk." CP at 186. The magistrate found probable cause and issued the requested search warrant for the Mini Cooper.

In the search of the Mini Cooper, law enforcement found methamphetamine and heroin in a bag under the driver's seat where Moreno was sitting. Additionally, law enforcement found a digital scale with residue on it on the driver's side floorboard where Moreno was sitting. Law enforcement also found methamphetamine, heroin, and Alprazolam pills in a bag under the front passenger seat, along with $1,620 in a fanny pack that was taken from Castilla-Whitehawk.

The State charged Moreno with one count of unlawful possession of a controlled substance, heroin, with intent to deliver and one count of unlawful possession of a controlled substance, methamphetamine, with intent to deliver. The State jointly tried Moreno and Castilla-Whitehawk as co-defendants.

B.      MOTION TO SUPPRESS

Prior to trial, Moreno sought to exclude evidence resulting from the search warrant, arguing that the affidavit supporting the warrant did not show the basis of knowledge for the informant's tip. CP 23-24, 195; 2 PDF 27. The trial court denied the suppression motion, ruling:

> Additionally, I'm going to note that I believe that *Aguilar Spinelli* has been satisfied as the basis of knowledge because I believe the court may take the reasonable common sense inferences from what has been stated, and it is clear from the record that it was Mr. Moreno giving [the CI] that information.

1 Verbatim Report of Proceedings (VRP) (Sept. 16, 2019) at 119.

C.      MOTION IN LIMINE

Moreno sought to exclude any reference to a child sitting in the backseat of the car when Moreno and Castilla-Whitehawk were detained. The State argued that the age of the person in the

3

backseat was relevant because their age made it "unlikely that that person would be in possession of those types of drugs." 1 VRP (Sept. 16, 2019) at 122. The trial court agreed with the State but ruled that any references to age would be very limited, and they could have later discussions about the issue if necessary.

Moreno again raised the issue before witness testimony, arguing that the child's presence was irrelevant and "highly prejudicial." 2 VRP (Sept. 17, 2019) at 262. The State argued that they were not seeking to admit evidence of the child's presence to show that the defendants were dangerous, but "[t]he fact of where people were seated and how many people were in the vehicle is a fact of this case" and showed "what was occurring was occurring between [the defendants] and not someone else." 2 VRP (Sept. 17, 2019) at 260-61. The trial court agreed with the State, ruling:

> While there is some prejudice to the defense concerning this evidence, it is the State's burden to establish possession, and the natural question the jury would ask when hearing about the car is who else was in the car? The State is entitled to present its case to satisfy its sole burden of establishing the guilt beyond a reasonable doubt, and it has to be as to all elements. And so even if the defense does not raise the argument that there was someone else in the car, their identity and such, that is something that I would expect and in fact hope a jury would be wondering about when determining whether or not the State has met its burden.

2 VRP (Sept. 17, 2019) at 262-63. The court also ruled "that the State is not to go on at any more length than what is necessary" to show that the drugs did not likely belong to the person in the backseat. 2 VRP (Sept. 17, 2019) at 262. The trial court further ruled that the jury would be given a limiting instruction, instructing the jury that it could consider the evidence about the child only for the issue of possession. The limiting instruction read:

4

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of the fact that a child was located in the back of the Mini Cooper and may be considered by you only for the purpose of deciding whether a defendant possessed a controlled substance. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 41.

D.      TESTIMONY AT TRIAL

Sergeant Packard testified that, when he approached the Mini Cooper, he observed Moreno sitting in the driver's seat and reaching under the seat. When he witnessed this movement, Sergeant Packard was concerned that Moreno was either reaching for a firearm or stashing narcotics. Another police officer who approached the vehicle testified that Castilla-Whitehawk had a fanny pack that was only halfway closed, and he could see a plastic baggy through the half open zipper, which he recognized as being packaging materials for narcotics.

Sergeant Packard also testified that when officers searched the car, they found $1,620 in the fanny pack that had been taken from Castilla-Whitehawk. Moreno had $66 on his person, and Castilla-Whitehawk had $100 on his person. Officers also found an operable digital scale with residue on it on the driver's side floorboard, and, in Sergeant Packard's experience, digital scales are used to weigh narcotics in the drug trade. There were approximately two ounces of methamphetamine and packaging in a bag on the driver's floorboard, and there were eight individually packaged bags of heroin, altogether weighing one ounce, in a bag on the floorboard of the driver's seat. The methamphetamine and heroin found in the bag under Moreno's seat were worth about $2,000. Officers also found approximately three ounces of methamphetamine, one

ounce of heroin, and Alprazolam under the passenger seat where Castilla-Whitehawk had been sitting.

Sergeant Packard further testified that, from his experience, purchasing an ounce of heroin or methamphetamine is more consistent with someone who is dealing drugs than purchasing for personal use. Possession of small plastic baggies can indicate that someone deals narcotics. Another police officer also testified that, in his experience, he would not expect a street level user to possess ounces of methamphetamine or heroin "unless they're an entrepreneur and they're selling drugs." 3 VRP (Sept. 18, 2019) at 493.

During the trial, three separate police officers testified that officers removed a child from the backseat of the Mini Cooper.

E.      ACCOMPLICE LIABILITY INSTRUCTION

The State requested a jury instruction on accomplice liability, and Moreno objected because the information did not charge accomplice liability. The trial court gave the following accomplice liability instruction to the jury:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 42.

F.      CLOSING ARGUMENTS

Castilla-Whitehawk's counsel began closing argument with a story about his aunt picking up a friend of a friend who had marijuana in his suitcase in the 1970s. In Moreno's closing argument, Moreno's counsel explained the concept of accomplice liability by telling a hypothetical alternative version of F. Scott Fitzgerald's *The Great Gatsby* where law enforcement officers enter a large party and arrest individuals for serving alcohol during prohibition. Following closing arguments from the defense, the prosecutor argued in his closing, "You notice that both defense attorneys told you stories. They didn't talk about the facts." 3 VRP (Sept. 19, 2019) at 675. The prosecutor mentioned the stories about the aunt and *The Great Gatsby* as examples of those stories and noted that no one testified about the facts in those stories. The prosecutor then argued, "You're dealing with the facts that were shown to you in court, right? That's what you're obligated to do." 3 VRP (Sept. 19, 2019) at 675. The State also discussed accomplice liability and argued that

> one is the supplier to the other. I don't have to prove which one supplied the other, but you know at the quantities they're dealing with, the other one was gonna go distribute it to someone else, whether it was a street user or another dealer.

3 VRP (Sept. 18, 2019) at 605. The State then argued that "the State's theory in this case is that they both possessed controlled substances with the intent to deliver, meaning give it, sell it, trade it, barter it away at some point." 3 VRP (Sept. 18, 2019) at 606.

G.      VERDICT AND SENTENCING

The jury found Moreno guilty of unlawful possession of a controlled substance, heroin, with intent to deliver and unlawful possession of a controlled substance, methamphetamine, with

intent to deliver. The trial court calculated Moreno's offender score as 9+, which included several convictions for unlawful possession of a controlled substance, and sentenced him to 120 months. In the sentencing hearing, the court stated that it was allowed to consider Moreno's previous drug offenses and gave Moreno the maximum sentence in part to keep him away from circumstances where he might continue to do "any crime, including but not limited to drug crimes." VRP (Sept. 26, 2019) (Sentencing Hearing) at 21.

Moreno appeals his convictions and sentence.

## ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Moreno argues that there is insufficient evidence to support his convictions for possession with intent to deliver. We disagree.

1. Legal Principles

a. Standard of review

We review challenges to the sufficiency of the evidence by considering whether any rational trier of fact, in viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Direct and circumstantial evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). And we defer to

the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

           b.        Possession of a controlled substance

For possession of a controlled substance with intent to deliver, the State must prove (1) possession (2) of a controlled substance (3) with the intent to deliver. RCW 69.50.401(1).[3]

"Possession may be actual or constructive." *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010), *review denied*, 171 Wn.2d 1006 (2011). Actual possession requires physical custody of the item. *Id*. Constructive possession occurs when a person has "dominion and control" over an item. *Id*. A person has dominion and control over an item when they "can immediately convert the item to their actual possession." *Id*.

Generally, "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880, *review denied*, 169 Wn.2d 1018 (2010). But a factfinder can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor, "such as a large amount of cash or sale paraphernalia." *Id*. "Sale paraphernalia include such items as scales, cell phones, and address lists." *State v. Lee*, 162 Wn. App. 852, 857, 259 P.3d 294 (2011), *reviewed denied*, 173 Wn.2d 1017 (2012).

---

[3] RCW 69.40.401 was amended in 2019 and 2022. However, there were no substantive changes made affecting this opinion; therefore, we cite to the current statute.

2.      Analysis

Here, Sergeant Packard testified that Moreno reached under the seat when he saw police approaching.  When he saw Moreno reach under the seat, Sergeant Packard was concerned that Moreno might be stashing drugs.  Officers found approximately two ounces of methamphetamine and one ounce of heroin in a bag under the driver's seat where Moreno was seated.  Based on this evidence, a rational factfinder viewing the evidence in the light most favorable to the State could reasonably infer that, when Moreno saw police approaching him, Moreno reached down to place the bag of methamphetamine and heroin under the seat of the car where he was sitting so that it would not be visible to the officers.  Thus, a rational factfinder could find beyond a reasonable doubt that Moreno had actual possession of the methamphetamine and heroin, which are controlled substances, because he had physical custody over them and stashed them under his seat.

Sergeant Packard also testified that officers found the two ounces of methamphetamine, packaging, and eight individually packaged bags of heroin, altogether weighing one ounce, in a bag under the driver's seat where Moreno was sitting.  The drugs found in the bag under Moreno's seat were worth about $2,000.  Sergeant Packard further testified that officers found a digital scale with residue on it on the driver's side floorboard, which is where Moreno had been sitting and where Moreno was reaching when Sergeant Packard saw him.  In Sergeant Packard's experience, digital scales are used to weigh narcotics in the drug trade, and purchasing an ounce of heroin or methamphetamine is more consistent with someone who is dealing drugs than purchasing them for personal use.  And Sergeant Packard testified that, the possession of small plastic baggies can indicate that someone deals narcotics.  Another police officer also testified that, in his experience,

he would not expect a street level user to possess ounces of methamphetamine or heroin "unless they're an entrepreneur and they're selling drugs." 3 VRP (Sept. 18, 2019) at 493. From this evidence, a rational factfinder could reasonably infer that Moreno possessed a dealer-level amount of methamphetamine and heroin, plus a digital scale with residue on it that he used to weigh narcotics in the drug trade, which constitutes sale paraphernalia,. *See Lee*, 162 Wn. App. at 857. Because a factfinder can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor, "such as a large amount of cash or sale paraphernalia," a rational factfinder could reasonably infer that Moreno had intent to deliver the heroin and methamphetamine. *O'Connor*, 155 Wn. App. at 290

Viewing the evidence in the light most favorable to the State, a rational factfinder could find beyond a reasonable doubt that Moreno had possession of methamphetamine and heroin, which are controlled substances, with intent to deliver. Moreno's insufficiency of the evidence claim fails.

B.      VALIDITY OF SEARCH WARRANT

Moreno argues that the trial court erred by failing to suppress physical evidence seized pursuant to the search warrant for the Mini Cooper because Sergeant Packard's affidavit supporting the warrant did not show the CI's basis of knowledge that a drug purchase was going to occur. We disagree.

1.      Legal Principles

We generally review

the issuance of a search warrant only for abuse of discretion. Normally we give great deference to the issuing judge or magistrate. However, at the suppression

11

> hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo.

*State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) (internal citations omitted). Review is limited to the information that was available to the issuing judge. *State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791, *review denied*, 184 Wn.2d 1004 (2015). That information is reviewed as a whole to determine whether a finding of probable cause is supported. *Id*. And we review the supporting affidavit "'in a commonsense manner, rather than hypertechnically.'" *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012) (quoting *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)). A "magistrate is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). Doubts are resolved in favor of the warrant's validity. *State v. Ollivier*, 178 Wn.2d 813, 847, 312 P.3d 1 (2013), *cert. denied*, 574 U.S. 834 (2014).

A search warrant may only issue upon a determination of probable cause. *Maddox*, 152 Wn.2d at 505. Probable cause may be based on a confidential informant's tip. *State v. Chenoweth*, 160 Wn.2d 454, 475, 158 P.3d 595 (2007). We "adhere to the *Aguilar/Spinelli* standard for establishing probable cause via a confidential informant." *Lyons*, 174 Wn.2d at 359 n.1. Under the *Aguilar/Spinelli* test, the affidavit supporting the warrant must show both the informant's veracity and basis of knowledge for the tip. *Ollivier*, 178 Wn.2d at 849-50. The basis of knowledge prong "may be satisfied by a showing that the informant had personal knowledge of the facts provided to the affiant." *Id*. at 850.

2.    Basis Of Knowledge

Moreno argues that the basis of knowledge prong was not satisfied, and therefore, the warrant should not have issued. But here, Sergeant Packard's affidavit stated that the CI told him that they were "taking Moreno to the [store]" to meet with Castilla-Whitehawk, and "the plan was for Mr. Moreno to purchase . . . a few ounces of believed heroin from Whitehawk." CP at 186. Additionally, Sergeant Packard stated that the CI told him Moreno was a drug dealer, that the CI "did not . . . ever purchase or I should say recently has not purchased . . . any narcotics from Mr. Moreno, but . . . [Moreno]'s offered narcotics to [the CI] on several different occasions." CP at 186. Because the CI had previously had conversations with Moreno about narcotics, it was reasonable to infer that Moreno was comfortable telling the CI about his drug-related activity. And because the CI was personally transporting Moreno to the location where the drug transaction was supposed to occur, the magistrate was "entitled to make [a] reasonable inference" that Moreno told the CI that the reason for the trip was to engage in the drug purchase. *Maddox*, 152 Wn.2d at 505. Further, the CI knew Moreno because the CI had provided law enforcement with information about Moreno about a month prior. The trial court denied the suppression motion because "the court may take the reasonable common sense inferences from what has been stated, and it is clear from the record that it was Mr. Moreno giving [the CI] that information." 1 VRP (Sept. 16, 2019) at 119.

Because the information in the affidavit allowed a reasonable inference that the CI had a basis of knowledge for the tip, the tip passed the second prong of the *Aguilar/Spinelli* test for informant tips and provided probable cause to search the Mini Cooper. *See Ollivier*, 178 Wn.2d

at 849-50. The trial court did not err by not suppressing the physical evidence seized pursuant to the search warrant.

C.      ACCOMPLICE LIABILITY INSTRUCTION

Moreno argues that the trial court erred by including jury instructions on accomplice liability because the evidence was insufficient for an accomplice liability instruction. We disagree.

1.      Legal Principles

a.      Standard of review

We review a trial court's choice of jury instructions for an abuse of discretion. *State v. Miller*, 14 Wn. App. 2d 469, 478, 471 P.3d 927 (2020), *review denied*, 196 Wn.2d 1036 (2021). A party is entitled to a jury instruction on their theory of the case where there is evidence to support those instructions. *Id*. When determining whether evidence is sufficient to support a jury instruction, we review the evidence in the light most favorable to the party requesting the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

b.      Possession with intent to deliver

For possession of a controlled substance with intent to deliver, the State must prove (1) possession (2) of a controlled substance (3) with the intent to deliver. RCW 69.50.401(1).

"Possession may be actual or constructive." *Reichert*, 158 Wn. App. at 390. Actual possession requires physical custody of the item. *Id*. Constructive possession occurs when a person has "dominion and control" over an item. *Id*. A person has dominion and control over an item when they "can immediately convert the item to their actual possession." *Id*.

Generally, "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *O'Connor*, 155 Wn. App. at 290. But a factfinder can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor, "such as a large amount of cash or sale paraphernalia." *Id.*

### c. Accomplice liability

An accomplice is someone who, knowing that it will promote or facilitate the commission of a particular crime, solicits, commands, encourages, or requests another person to commit it, or aids or agrees to aid another person in planning or committing it. RCW 9A.08.020(3)(a). "Mere presence of the defendant without aiding the principal—despite knowledge of the ongoing criminal activity—is not sufficient to establish accomplice liability." *State v. Truong*, 168 Wn. App. 529, 540, 277 P.3d 74, *review denied*, 175 Wn.2d 1020 (2012).

When considering accomplice liability in the context of unlawful possession with intent to deliver, "whether one or the other of the accomplices actually possessed the [controlled substance] is not dispositive." *State v. McPherson*, 111 Wn. App. 747, 760, 46 P.3d 284 (2002). Instead, the issue is whether the accomplice, by his presence and actions, attempted to facilitate the crime of possession with intent to deliver. *Id.*

### 2. Analysis

Here, the State's theory of the case was that both Moreno and Castilla-Whitehawk possessed the drugs in the car, not for personal use, but with intent to deliver. As discussed above, the evidence showed that Moreno possessed some of the drugs in the car with intent to deliver

because he actually possessed a large amount of methamphetamine and heroin, and he constructively possessed a scale that could be used for weighing narcotics. But the evidence also showed that Castilla-Whitehawk possessed some of the drugs in the car with intent to deliver because law enforcement found approximately three ounces of methamphetamine, one ounce of heroin, and pills containing Alprazolam under the passenger seat, where Castilla-Whitehawk was sitting. Also, Castilla-Whitehawk's fanny pack contained $1,620 and small plastic bags. Law enforcement testified that purchasing an ounce of methamphetamine or heroin is usually more consistent with selling drugs than keeping them for personal use, and small plastic bags like the type found in the car are consistent with drug distribution. Thus, a factfinder could infer that the small plastic bags in Castilla-Whitehawk's fanny pack were sale paraphernalia. Based on this evidence, a factfinder can reasonably infer intent to deliver because Castilla-Whitehawk possessed a significant amount of controlled substances plus "a large amount of cash [and] sale paraphernalia." *O'Connor*, 155 Wn. App. at 290. Thus, the record supports the State's theory that both Moreno and Castilla-Whitehawk possessed controlled substances with intent to deliver.

The evidence also shows that Moreno attempted to facilitate the crime. There is no evidence that Moreno went to the scene with a digital scale or controlled substances. However, Sergeant Packard saw Moreno reach under the driver's seat of the car where heroin and methamphetamine were later located. And there was a digital scale with residue located on the driver's side floorboard where Moreno was seated. Viewing the evidence in the light most favorable to the State, the reasonable inference is that Moreno took possession of the heroin, methamphetamine, and digital scale to facilitate a drug deal with Castilla-Whitehawk and aid

16

Castilla-Whitehawk in the crime of possession with intent to deliver. Therefore, the evidence supports giving the accomplice liability instruction, and the trial court did not abuse its discretion by giving the instruction.

D.     ADMISSION OF PREJUDICIAL EVIDENCE

Moreno argues that the trial court erred by allowing the jury to hear evidence that a child was in the backseat at the time of the investigation. He contends that this evidence was irrelevant and highly prejudicial, meaning it should have been excluded under ER 402 and ER 403. We disagree.[4]

We review the trial court's evidentiary rulings for an abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). However, "[w]e review a trial court's ER 403 balancing under a 'manifest abuse of discretion' standard of review." *State v. McCarthy*, 178 Wn. App. 90, 103, 312 P.3d 1027 (2013) (internal quotation marks omitted) (quoting *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001)). A court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017). A ruling is manifestly unreasonable or based on untenable grounds when it is unsupported by the record or results from applying the wrong legal standard. *Id*. To find an abuse of discretion, we must be convinced that "'*no reasonable person* would take the

---

[4] In his brief, Moreno states that "[d]efense counsels" "offered to stipulate that they had no intention of blaming anyone else in the car for possession of the drugs." Br. of Appellant at 25. The record shows that Castilla-Whitehawk's counsel offered this stipulation, but Moreno's counsel made no such offer.

view adopted by the trial court.'" *Id.* (quoting *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000)).

Only relevant evidence is admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. Trial courts enjoy "'wide discretion in balancing the probative value of evidence against its potentially prejudicial impact.'" *State v. Bajardi*, 3 Wn. App. 2d 726, 730, 418 P.3d 164 (2018) (quoting *State v. Stenson*, 132 Wn.2d 668, 702, 940 P.2d 1239 (1997), *cert. denied*, 532 U.S. 1008 (1998)). "'Evidence may be unfairly prejudicial under ER 403 if it is evidence dragged in for the sake of its prejudicial effect or is likely to trigger an emotional response rather than a rational decision among the jurors.'" *Lodis*, 192 Wn. App. at 48 (internal quotation marks omitted) (quoting *Hayes v. Wieber Enters.*, Inc., 105 Wn. App. 611, 618, 20 P.3d 496 (2001)).

Here, the State argued that it was not seeking to admit evidence of the child's presence to show that the defendants were dangerous, which could be construed as "dragg[ing it] in for the sake of its prejudicial effect." *Id*. at 48 (quoting *Hayes*, 105 Wn. App. at 618). Rather, the State argued, the evidence would help it prove the essential element of possession because "[t]he fact of where people were seated and how many people were in the vehicle is a fact of this case" and the State wanted to show that "these drugs and what was occurring was occurring between [the

defendants] and not someone else." 2 VRP (Sept. 17, 2019) at 260-61. The trial court proceeded to weigh the probative value of the evidence against its potential for unfair prejudice:

> While there is some prejudice to the defense concerning this evidence, it is the State's burden to establish possession, and the natural question the jury would ask when hearing about the car is who else was in the car? The State is entitled to present its case to satisfy its sole burden of establishing the guilt beyond a reasonable doubt, and it has to be as to all elements. And so even if the defense does not raise the argument that there was someone else in the car, their identity and such, that is something that I would expect and in fact hope a jury would be wondering about when determining whether or not the State has met its burden.

2 VRP (Sept. 17, 2019) at 262-63.

Further, the trial court took measures to mitigate any prejudice resulting from this evidence by instructing "that the State is not to go on at any more length than what is necessary" to show that the drugs did not likely belong to the person in the backseat. 2 VRP (Sept. 17, 2019) at 262. The trial court also instructed the jury that they could only consider the fact that a child was in the backseat "for the purpose of deciding whether a defendant possessed a controlled substance." CP at 41.

The evidence was relevant to prove possession, which is an essential element of the charged crimes, and any resulting prejudice was mitigated by the limiting instruction. Thus, it was not "manifestly unreasonable" for the trial court to conclude that the evidence's probative value outweighed the potential for prejudice. *See Salgado-Mendoza*, 189 Wn.2d at 427. The trial court's decision to allow the jury to hear evidence of the child in the backseat was well within its wide discretion to weigh the probative value of evidence against its prejudicial impact. *See Bajardi*, 3 Wn. App. 2d at 730. The trial court did not err in allowing evidence of the child in the backseat to be admitted.

19

E. SENTENCING

Moreno argues that he should be resentenced with a recalculated offender score following the Supreme Court's decision in *Blake*. The State concedes that remand is appropriate for resentencing without the inclusion of prior unlawful possession of controlled substances convictions in the offender score. We accept the State's concession and remand for resentencing consistent with *Blake*.

"[A] prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered" as part of a sentencing proceeding. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796, *cert. denied* 479 U.S. 930 (1986). In *Blake*, the Supreme Court held that former RCW 69.50.4013(1) (2017), the statute criminalizing unlawful possession of a controlled substance, is unconstitutional. 197 Wn.2d at 186. Therefore, the statute is void. *Id.* at 195.

Moreno's offender score included several prior convictions for unlawful possession of a controlled substance under former RCW 69.50.4013(1). In Moreno's sentencing hearing, the trial court stated that it was allowed to consider Moreno's previous drug offenses and gave Moreno the maximum sentence in part to keep him away from circumstances where he might continue to do "any crime, including but not limited to drug crimes." VRP (Sept. 26, 2019) (Sentencing Hearing) at 21. Because former RCW 69.50.4013(1) has been held unconstitutional, Moreno's prior convictions for unlawful possession of a controlled substance are unconstitutional on their face and should not be included in Moreno's offender score for sentencing purposes. We reverse Moreno's sentence and remand to the trial court for resentencing consistent with *Blake*.

SAG

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Moreno claims that his trial counsel provided ineffective assistance of counsel by failing to interview or investigate the CI as a potential witness. We do not consider this claim.

When an ineffective assistance claim is raised on appeal, the defendant must show in the record the absence of a legitimate strategic or tactical reason supporting the challenged conduct or omission by counsel. *State v. Grier*, 171 Wn.2d 17, 29, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We will not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Thus, "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed [and heard] concurrently with the direct appeal." *Id*.

Here, Moreno claims that his trial counsel failed to interview or investigate the CI, but the record is silent as whether Moreno's trial counsel interviewed or investigated the CI. Therefore, we do not consider Moreno's ineffective assistance of counsel claim on direct appeal. If Moreno is in possession of evidence outside the record that relates to his claim, the appropriate means of raising such a claim is a personal restraint petition. *See Id*.

B.    PROSECUTORIAL MISCONDUCT

Moreno claims that the prosecutor committed misconduct by improperly explaining accomplice liability and disparaging defense counsel in closing argument. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show first that the prosecutor's comments were improper and second that the comments were prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). "We first determine whether the prosecutor's conduct was improper." *State v. Teas*, 10 Wn. App. 2d 111, 120, 447 P.3d 606 (2019), *review denied*, 195 Wn.2d 1008 (2020). If we find that the prosecutor's conduct was improper, then the question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id*. "We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Johnson*, 158 Wn. App. 677, 683, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011). Further, "a prosecutor has wide latitude to argue reasonable inferences from the evidence." *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011).

1.      Comments About Accomplice Liability

Moreno claims that the prosecutor committed misconduct by improperly explaining accomplice liability in his closing argument, taking issue with the prosecutor's statement, "'You've got Mr. Castilla-Whitehawk saying, well, it was'nt [sic] really me that was there to deliver the drugs. I was just there to buy it from someone.'" SAG at 5 (quoting 3 VRP (Sept 19, 2019) at 663)). Moreno also claims that the prosecutor committed misconduct by saying:

> "But one is the supplier to the other. I don't have to prove which one supplied the other, but [sic] know at the quantities they're dealing with, the other one was gonna go distribute it to someone else, whether it was a street user or another dealer. I'll come back and talk a little more about that, but that's how this fits into this accomplice concept."

SAG at 5 (quoting 3 VRP (Sept. 18, 2019) at 605). Additionally, Moreno takes issue with the prosecutor's argument that he "'[p]ossessed heroin and the other was an accomplice, if one of them possessed it and they were an accomplice to the other, it does not matter who possessed it." SAG at 5 (quoting 3 VRP (Sept 18, 2019) at 606-07). Moreno claims that these comments shifted the burden of proof, trivialized the burden of proof, or misstated the law. We disagree.

        a.      Shifting the burden of proof

"[I]t is improper for the prosecutor to argue that the burden of proof rests with the defendant." *Thorgerson*, 172 Wn.2d at 453. "A criminal defendant has no duty to present evidence, and it is error for the prosecutor to suggest otherwise." *State v. Osman*, 192 Wn. App. 355, 366, 366 P.3d 956 (2016).

Here, the prosecutor's first comment about Castilla-Whitehawk saying he was just there to buy drugs does not relate to the burden of proof or what the defense is required to prove, so it does not improperly shift the burden of proof.

The prosecutor's second statement, "I don't have to prove which one supplied the other," did not say or imply that the defense was responsible for proving or disproving anything related to supplying. 3 VRP (Sept. 18, 2019) at 605. The prosecutor instead said that the State did not need to prove which defendant supplied the other one in order for the jury to convict. In other words, even if the jury found that Moreno did not supply Castilla-Whitehawk, the evidence presented allowed the jury to find Moreno guilty of possessing controlled substances with intent to deliver to other individuals.

The prosecutor's third statement, "it does not matter who possessed it," also did not say or imply that the defense was responsible for proving or disproving anything related to possession. 3 VRP (Sept. 18, 2019) at 607. Rather, the prosecutor implied that the State did not need to prove which defendant possessed the controlled substances in order for the jury to convict. In other words, even if the jury found that Moreno did not possess the controlled substances, the evidence allowed the jury to find Moreno guilty as an accomplice for aiding Castilla-Whitehawk in his crime of possession with intent to deliver. Because the prosecutor's comments do not state or imply that the burden of proof rests with the defendant, they did not improperly shift the burden of proof.

### b. Trivializing the burden of proof

A prosecutor's arguments are improper if they discuss the reasonable doubt standard in a way that "'trivialize[s] and ultimately fail[s] to convey the gravity of the State's burden and the jury's role in assessing' the State's case." *Johnson*, 158 Wn. App. at 684 (quoting *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010)). This impropriety occurs when the State incorrectly explains how certain a juror should be to convict the defendant. *See id.* A statement is also improper if it implies that the jury should convict the defendant unless it found a reason not to do so. *Id.*

Here, the prosecutor's comments did not relate to the reasonable doubt standard or the level of certainty required for a conviction. The prosecutor's comments also did not imply that the jury should convict the defendant unless it found a reason not to do so. Therefore, the prosecutor's comments did not improperly trivialize the burden of proof.

24

c. Misstating the law

"A prosecutor's misstatement of the law may constitute improper conduct." *State v. Pinkney*, 2 Wn. App. 2d 574, 582, 411 P.3d 406 (2018). For possession of a controlled substance with intent to deliver, the State must prove (1) possession (2) of a controlled substance (3) with the intent to deliver. RCW 69.50.401(1). A defendant can be convicted as an accomplice for unlawful possession with intent to deliver even where they do not possess the controlled substance, as long as they attempted to facilitate the principal's possession with intent to deliver. *McPherson*, 111 Wn. App. at 760.

Here, the prosecutor's comment about Castilla-Whitehawk saying he was just there to buy drugs does not state any principle of law, so it cannot misstate the law.

The prosecutor's second statement was, "I don't have to prove which one supplied the other, but you know at the quantities they're dealing with, the other one was gonna go distribute it to someone else, whether it was a street user or another dealer." 3 VRP (Sept. 18, 2019) at 605. Shortly after this statement, the prosecutor clarified that "the State's theory in this case is that they both possessed controlled substances with the intent to deliver, meaning give it, sell it, trade it, barter it away at some point." 3 VRP (Sept. 18, 2019) at 606. With this context, the comment about further distribution was part of the prosecutor's explanation of the State's theory of the case. Under this theory of the case, the prosecutor's comment accurately expressed that the State did not need to prove one particular defendant supplied the other as long as the jury found that both men possessed controlled substances and were later planning to distribute to someone else. *See* RCW 69.50.401(1).

The prosecutor's third statement, "if one of them possessed it and they were an accomplice to the other, it does not matter who possessed it," accurately stated the relevant law regarding accomplice liability since a defendant can be convicted as an accomplice even without possessing the controlled substance. 3 VRP (Sept. 18, 2019) at 606-07; *McPherson*, 111 Wn. App. at 760. Because the prosecutor's statements accurately stated the relevant law, they did not improperly misstate the law.

2.      Comment About Defense Counsel

Moreno argues that the prosecutor committed misconduct by disparaging defense counsel when the prosecutor argued that the defense attorneys told stories and did not talk about the facts. We disagree.

"It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." *Thorgerson*, 172 Wn.2d at 451. But "the prosecuting attorney is entitled to make a fair response to the arguments of defense counsel." *State v. Brown*, 132 Wn.2d 529, 566, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998).

Here, Castilla-Whitehawk's counsel began his closing argument with an anecdote about his aunt picking up a friend of a friend who had marijuana in his suitcase in the 1970s. In Moreno's closing argument, Moreno's counsel explained the concept of accomplice liability by telling an alternative version of *The Great Gatsby* where law enforcement officers enter a large party and arrest individuals for serving alcohol during prohibition. Following these closing arguments, the prosecutor argued that "[y]ou notice that both defense attorneys told you stories. They didn't talk about the facts." 3 VRP (Sept. 19, 2019) at 675. The prosecutor then went on to specifically

mention the stories about the aunt and *The Great Gatsby* as examples of those stories and mentioned that no one testified about the facts contained in those stories. The prosecutor then attempted to refocus the jury on the facts of the case by stating, "You're dealing with the facts that were shown to you in court, right? That's what you're obligated to do." 3 VRP (Sept. 19, 2019) at 675.

Because both defense attorneys told demonstrative stories that included facts outside the record, it was fair for the prosecutor to comment that they told stories and did not talk about the facts, especially since the prosecutor immediately clarified exactly which stories he was talking about. Because the comment about telling stories was a fair response to defense counsels' closing arguments, the prosecutor's argument was not improper. *See Brown*, 132 Wn.2d at 566. Therefore, Moreno has failed to make the showing of impropriety necessary for his prosecutorial misconduct claim, and his SAG claim fails.

## CONCLUSION

We hold that the evidence was sufficient to sustain Moreno's convictions, the trial court did not err by denying suppression of physical evidence resulting from a search warrant, the trial court did not err by giving an accomplice liability jury instruction, the trial court did not err by allowing the jury to hear evidence of a child being in the car where the crimes occurred, and Moreno should be resentenced without consideration of his prior unlawful possession of a controlled substance convictions. We also hold that Moreno's SAG claims fail. Accordingly, we affirm Moreno's convictions, reverse Moreno's sentence, and remand to the trial court for resentencing consistent with this opinion.

No. 54218-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Glasgow, C.J.